UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

U.S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED
DEC 1 1 2012
CHRIS R. JOHNSON, CLERK
BY
DEPUTY CLERK

JERRY DON MCMASTER,
INDIVIDUALLY AND ON BEHALF OF
THE ESTATE OF DEBRA WYNNE
MCMASTER AND HIS MINOR
CHILDREN, ALYSSA CLAIRE
MCMASTER AND ERIN CLARA
MCMASTER,

CIVIL ACTION NO. 12-4146

**Plaintiffs,**

**VERSUS**

DISTRICT JUDGE Hickey

**THE UNITED STATES OF AMERICA,**

**Defendant.**

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Jerry Don McMaster, individually and on behalf the estate of his deceased wife, Debra Wynne McMaster, and his two minor daughters, Alyssa Claire McMaster and Erin Clara McMaster (hereinafter sometimes "the Plaintiff"), who respectfully complains of and asserts causes of action against the defendant, the United States of America, as follows:

## PRELIMINARY STATEMENT

1.

The claims asserted herein are brought against the United States of America pursuant to the Federal Tort Claims Act (28 U.S.C. § 2671, *et seq.* and 28 U.S.C. § 1346(b)(1)), the Arkansas Survival of Actions Statute, Ark. Code Ann. § 16-62-101, and

1

the Arkansas Wrongful Death Act, Ark. Code Ann. § 16-62-102, for personal injury and wrongful death caused by the negligent and wrongful, malicious, and/or intentional acts and omissions and/or with reckless wanton disregard for the foreseeable consequences of such acts of the employees of the United States Government while acting within the course and scope of their employment.

## JURISDICTION AND VENUE

2.

The claims asserted herein against Defendant, the United States of America, arise under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. 2671 *et seq.* and 28 U.S.C. § 1346(b)(1), and this court has original jurisdiction over same pursuant to 28 U.S.C. 1331, and supplemental jurisdiction over the pendant state law claims pursuant to 28 U.S.C. § 1337.

3.

Venue is proper in the Western District of Arkansas under 28 U.S.C. § 1402 because this is a civil action involving a tort claim against the United States and the acts and omissions complained of occurred in this judicial district.

4.

Plaintiff has fully complied with 28 U.S.C. § 2675 and all procedural prerequisites to filing this action have been satisfied, met, or otherwise waived, including the exhaustion of all administrative remedies under the FTCA. Originally, on or about December 30, 2010, Plaintiff, through undersigned counsel, filed claims regarding the subject matter of this complaint with the United States Department of Agriculture Forest Service (hereinafter "Forest Service"). Pursuant to an agreement with the Defendant,

the plaintiffs resubmitted a portion of the administrative claim under the FTCA which was received by the Forest Service on or about April 19, 2012, and, as of the date of filing this complaint, Plaintiff has received a denial of his claims. His claims are timely.

## PARTIES

5.

Plaintiff Jerry Don McMaster is a resident and citizen of the State of Arkansas. At all lawful times, Jerry Don McMaster was lawfully married to and resided with the decedent, Debra Wynne McMaster, who died on June 11, 2010 as a result of the negligence, malicious, intentional, and reckless acts that give rise to this action, and brings this action individually and on behalf of his two minor daughters, Alyssa McMaster and Erin Clara McMaster. Decedent, Debra Wynne McMaster was the mother of plaintiffs, Alyssa Claire McMaster and Erin Clara McMaster. These plaintiffs are wrongful death beneficiaries of her estate.

6.

Defendant, the United States of America, is a sovereign government that has consented to be sued for civil liability in accordance with the provisions of the FTCA, 28 U.S.C. § 2671 *et seq.* At all times material hereto, Defendant, United States of America, was and is responsible for the actions, decisions, omissions, operations, fault and neglect of the officers, agents and employees of the Forest Service.

## EVENTS FORMING THE BASIS OF THE COMPLAINT

7.

On or about June 10, 2010, after paying the fee, Plaintiff, his wife, Debra McMaster, and their daughters, Alyssa Claire and Erin Clara, were camping in Loop D,

site 1, at the Albert Pike Recreation Area in the Ouachita National Forest in Caddo Gap, Arkansas.

8.

The McMaster's spent the afternoon of June 10, 2010 riding bicycles, meeting with their camp host, and speaking with park rangers who were planning a fishing tournament. No one expressed to them concern, caution or alarm about the weather on that date or otherwise gave cause for concern about the campsite at which the family was camping. In the evening, the McMasters retired to their camper, ate dinner, watched a movie, and went to bed.

9.

In the early morning hours of June 11, 2010, a powerful storm made its way through Caddo Gap, Arkansas and the Little Missouri River overran its banks in the Albert Pike Campgrounds.

10.

Plaintiff was awoken by an individual, now known as a Mr. Chriss, who reported having trouble upstream and asked if his wife and two young children could stay with the McMasters. Shortly thereafter, Jerry and Debra McMaster became concerned about their dog that was sleeping outside underneath the camper. When Plaintiff went outside to check on the dog, he found that the water outside the camper was ankle-deep.

11.

Plaintiff became concerned with the weather conditions and determined that his family, Mrs. Chriss and the Chriss's two children needed to leave the camper and move

4

to higher ground. As the group exited the camper and attempted to travel to higher ground, the water rose rapidly making their escape impossible.

12.

Plaintiff decided the group had to get higher and lifted his children up into a nearby tree. Plaintiff, at his wife's insistence, climbed up onto the tree holding the youngest Chriss child. This way Plaintiff could hold on to the tree and cradle the Chriss child and place his youngest child on a limb above him. Mrs. Chriss held on to the base of the tree with the other Chriss child. At some point, Plaintiff's arms grew tired, and with the assistance of his oldest daughter, lifted the youngest Chriss child onto a branch below his two daughters. His older daughter climbed up higher. His wife, Debra, held on to the base of the tree as well.

13.

The water continued rising and rushing through the campground, and Mrs. McMaster, Mrs. Chriss, and the Chriss child were swept away by the flood waters. Protecting the other children, and holding one for a long time while holding on to the tree, Jerry McMaster and the three children remained in the tree for several hours until the water began to recede. As the water receded, Mr. McMaster let go of the tree and waded with the children to higher ground where they waited in the rain and darkness until daylight. At no point was Plaintiff assisted or offered aid from any United States Forest Service agents or representatives.

14.

Several hours after the water receded, Plaintiff discovered that his wife had been killed by the rushing waters.

## CLAIMS AGAINST DEFENDANT

15.

Plaintiff incorporates and re-alleges the allegations contained in paragraphs 1-14 as though set forth fully herein.

16.

At all relevant times, defendant, the United States, the employees and agents of the United States Forest Service ("Forest Service") owed a duty to Debra McMasters, Jerry McMasters and his children, and other campers at the Albert Pike Recreation Area and campsite (hereinafter "Albert Pike campsite") to exercise reasonable care, including the duty to monitor, guard and warn against unreasonably dangerous conditions. Defendant's negligence, gross negligence, reckless disregard, breach of the duty to warn, indifference for foreseeable consequences, malicious and intentional failure to guard or warn against the unreasonably dangerous conditions existing at the Albert Pike campsite are the cause of death of Plaintiff's wife, Debra Wynne McMaster, as well as the personal injuries suffered by Plaintiff and his daughters.

17.

Defendant's negligent, gross negligence, reckless, malicious and intentional acts and omissions include, but are not limited to:

a. improper design, placement and construction of the Albert Pike campsite (hereinafter "Albert Pike campsite") in a flood plain with a known history of flood incidents;

b. failing to implement an adequate warning system to notify campers at the Albert Pike campsite of dangerous weather conditions and flooding risks;

c. failing to develop a contingency or response plan to deal with a major flooding event at the Albert Pike campsite;

d. failing to educate Forest Service employees and Albert Pike employees on applicable directives and policies related to flood hazards and failing to implement those directives and policies;

e. failing to adequately train Albert Pike employees and Carnp Hosts for emergency situations, including a flood;

f. failing to post signs or otherwise warn campers of the dangers in the area as a result of conditions that the Forest Service knew or should have known existed at Albert Pike in June 2010, particularly flooding;

g. failing to give Albert Pike Camp Hosts and campers notice of dangerous weather conditions that were predicted to affect the Albert Pike campsite on June 11, 2010;

h. failing to warn Albert Pike Camp Hosts and campers of the impending dangerous weather conditions on June 11, 2010;

i. failing to maintain the Albert Pike campsite in a reasonably safe condition for public use and failing to protect the health and safety of Albert Pike visitors;

j. failing to monitor and ensure the safety of campers at Albert Pike;

k. failing to evacuate the campers at Albert Pike in a timely manner;

l. failing to maintain and/or repair emergency response and communication equipment; and

m. failure to maintain and implement contingency plans to deal with a major flooding event, including plans for evacuation or search and rescue of visitors;

n. failing to rescue and/or give aid and assistance once the danger materialized,

o. failure to follow their own regulations and internal directives;

p. other negligent, gross negligent, reckless, malicious and intentional acts and omissions that have yet to be determined. (See Exhibit A, USDA Review Team Report, dated September 24, 2010.)

18.

The performance of the employees of the Forest Service in designing, approving, developing, and constructing the campground, facilities, and amenities at Loop D at the Albert Pike campsite was malicious, reckless, indifferent to the clear foreseeable consequences, grossly negligent and intentional. Such actions and omissions include but are not limited to:

a. failing to accurately determine the 100-year flood plain elevation;

b. failing to build the Loop D campground in a location outside the 100-year flood plain;

c. failing to post signs or otherwise warn visitors of the flood hazards in Loop D of the Albert Pike campsite;

d. intentionally misrepresenting the 100-year flood plain elevation and other flood hazards to the engineers and architects hired to build the Loop D campground;

e. failing to comply with applicable directives and policies of the agency related to flood hazards;

f. intentionally disregarding the 100-year flood plain elevation, the well-document history of flooding of the Albert Pike campsite, and specialists' recommendations to limit camping on Loop D to primitive camping;

g. failing to adequately supervise construction of the Loop D campground;

h. failing to maintain the Albert Pike Campsite and surrounding area in a reasonably safe manner; and

i. failure to warn staff, volunteers, campers, and users throughout the course of the storm leading up to the flood;

j. failure to warn;

k. failure to put into effect any emergency or evacuation plan, training program, and signage, and failure to monitor and warn regarding the danger of flooding in Loop D;

l. failure to require the repair or replacement of a nearby weather radio tower for nearly two years, delaying the repair or replacement until after 20 people died due to lack of warning of flash floods;

    m.    other negligent, grossly negligent, reckless, malicious and intentional acts and omissions that have yet to be determined.  (See Exhibit A, USDA Review Team Report, dated September 24, 2010.)

19.

Design planning, approval, development and construction of the structures, facilities, and amenities in Loop D took place despite the Defendant's knowledge that such use was inherently dangerous, and that such development violated governing law, regulations and its own policies and procedures designed to prevent adverse impacts on human health, safety and welfare created by land use development in flood plains.

20.

Prior to and at the time of the June 11, 2010 flood, the Defendant knew, or in the exercise of ordinary care should have known in light of the surrounding circumstances, that their conduct would naturally and probably result in injury to others, yet it continued to act maliciously, and with deliberate indifference and reckless disregard of the consequences.

21.

Development and construction in Loop D was an "ultrahazardous" condition, use or structure within the meaning of that term pursuant to the Arkansas Recreational Use Act, Arkansas Code sections 18-11-301, et seq.

22.

The acts and omissions by the Defendant, its agencies, employees and agents, described herein were "malicious" within the meaning of that term pursuant to the Arkansas Recreational Use Act, Arkansas Code sections 18-11-301, et seq., and as

that term is defined by Arkansas law, including as the term malicious is defined for the purpose of determining liability for punitive damages.

23.

The United States of America is liable to the Plaintiffs in tort, under the Arkansas Recreational Use Act, both due to its malicious failure to protect the RV users/campers, like the McMasters, from the ultrahazardous condition, use and structures in developing an area with a known history of frequent flooding and also for the failure to warn regarding the existence of that ultrahazardous condition, use, and structures.

24.

The Defendant acted with malice, or deliberate or reckless indifference in developing Loop D because it knew there had been prior flooding at levels equally or nearly as hazardous as the June 2010 event.

25.

Defendant acted with malice, intent, and/or deliberate or reckless indifference in developing Loop D because, based on the available records and date, it knew that flooding of the Albert Pike Recreational Area on or about the level experienced on June 11, 2010, occurred on les than a 15-year return frequency, with some data for the area tributary to the Albert Pike Recreation Area indicating a 4-5 year storm and other data indicating a frequency of once every two years. Further, Defendant knew that soil data indicated that flooding at Loop D could be expected to occur on (a) on a frequency ranging from approximately once every two months to once every two years, or (b) once per year.

26.

Defendant acted with malice, or deliberate or reckless indifference in its failure to comply with mandatory safety policies and to ensure such compliance in the development of Loop D, including Forest Service policies mandating that critical facilities, including recreation facilities, should be located outside the 100-year floodplain specifically to protect the health and safety of personnel and users.

27.

As a direct and proximate result of the negligence, gross negligence, reckless disregard, malicious and intentional acts and omissions described hereinabove, Plaintiff, individually, asserts a wrongful death claim against Defendant for the death of his wife, Debra Wynne McMaster, and seeks to recover the following non-exclusive damages:

a. loss of love, affection, and consortium (past, present and future);

b. mental anguish and emotional distress (past, present and future);

c. loss of companionship (past, present and future); and

d. any and all past, present, and future pecuniary losses, including but not limited to loss of financial support and loss of services, loss of wages, benefits, and economic opportunity.

e. any other category of damage to which they are entitled under the laws of the State of Arkansas.

28.

As a direct and proximate result of the negligence, gross negligence, reckless disregard, malicious and intentional acts and omissions described hereinabove, Plaintiff, on behalf of his two minor daughters, asserts a wrongful death claim against Defendant

for the death of their mother, Debra Wynne McMaster, and seeks to recover the following non-exclusive damages:

   a. loss of love and affection(past, present and future);

   b. mental anguish and emotional distress (past, present and future);

   c. loss of companionship (past, present and future)

   d. loss of parental guidance (past, present and future); and

   e. any and all past, present, and future pecuniary losses, including but not limited to loss of financial support and loss of services, loss of wages, benefits, and economic opportunity.

   f. any other category of damage to which they are entitled under the laws of the State of Arkansas.

29.

Plaintiff, as the personal representative of his wife's estate and on behalf of the estate, asserts a survival action against Defendant, and seeks to recover damages for Debra Wynne McMaster's:

   a. extreme conscious pain and suffering;

   b. extreme fear of impending death;

   c. extreme mental anguish and emotional distress;

   d. loss of life;

   e. loss of enjoyment of life;

   f. economic loss including loss of wages, benefits, and economic opportunity;

   g. property damages; and

    h.    any other claim or damages to which she would have been entitled had she survived.

    i.    any other category of damage to which they are entitled under the laws of the State of Arkansas.

30.

As a result of the events described hereinabove, Plaintiff, individually and on behalf of his two minor daughters, is further entitled to damages for the following injuries suffered by Plaintiff and his daughters:

    a.    extreme conscious pain and suffering (past, present, future);

    b.    extreme fear of impending death; and

    c.    extreme mental anguish and emotional distress (past, present, future).

31.

As a result of the events described hereinabove, Plaintiff, individually and on behalf of his daughters and his wife's estate, is further entitled to recover damages from the following property loss and expenses:

    a.    loss of a Keystone camper;

    b.    loss of personal belongings, including but not limited to bicycles, GPS receiver, camera, video camera, clothes, bedding, kitchen supplies, and other personal items not recovered;

    c.    funeral expenses for Debra Wynne McMaster's funeral; and

    d.    to the extent allowed by law, attorneys' fees, court costs, all costs, judicial interest, punitive and exemplary damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Jerry Don McMaster, individually, and on behalf of the estate of his wife, Debra Wynne McMaster, and on behalf of their two minor daughters, Alyssa Claire McMaster and Erin Clara McMaster, is entitled to damages from Defendant in an amount to be proven and apportioned at trial for all compensatory damages described herein.

Plaintiff is further entitled to and does hereby seek recovery of all costs and attorneys' fees incurred by Plaintiff in this action, Plaintiff further seeks any compensatory and punitive damages allowed by law, together with such further and additional relief at law or equity that this Court may deem appropriate or proper.

Respectfully submitted,

PETTIETTE, ARMAND, DUNKELMAN,
WOODLEY, BYRD & CROMWELL, L.L.P.

/s/Lawrence W. Pettiette, Jr.

Lawrence W. Pettiette, No. 10486
Rendi B. Wiggins, No. 29700
400 Texas Street, Suite 400 (71101)
Post Office Box 1786
Shreveport, LA   71166-1786
Phone: (318) 221-1800 Fax: (318) 226-0390

ATTORNEYS FOR PLAINTIFFS